310 So.2d 455 (1975)
Maggie Ann HESTER, Appellant,
v.
STATE of Florida, Appellee.
No. 74-255.
District Court of Appeal of Florida, Second District.
April 9, 1975.
James A. Gardner, Public Defender, Sarasota, and Ellen Condon, Asst. Public Defender, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Chief Judge.
Appellant appeals her conviction of unlawfully torturing or punishing her 15-month-old child in violation of § 828.04, F.S. 1973. We affirm.
The conviction herein was predicated essentially on appellant's confession made to police officers and introduced over her objection. The sole point meriting discussion herein is whether there was a sufficient *456 independent prima facie showing of a corpus delicti so as to render the confession admissible. We think so.
Appellant correctly concedes that the requisite "independent" prima facie evidence need not establish the corpus deliciti beyond and to the exclusion of every reasonable doubt at that stage of the proceeding, and she agrees that it need only be sufficient to show the probability or tend to show the existence of the commission of a crime.[1] She insists, however, that the evidence falls far short of this here.
We look at that evidence now. Apart from the aforesaid confession, the entire state's case was predicated on the testimony of two doctors. The first was Dr. Clemons, a resident in training in pathology at Tampa General Hospital. He testified as follows:
"Q Doctor, would you describe the nature of the injury which you found to this little girl upon your examination?
A Yes, sir. I found that her female area had been injured; that she had what's called a second degree tear or laceration of her female area. This means that the laceration extended beyond the skin and on the outside of the female organs, and it extended beyond the membrane lining of the vagina. It extended into the deeper tissues, subcutaneous tissues and muscle area... .
* * * * * *
... [T]he tear would have been less than one-half of an inch deep. But it was, it did not extend all the way to the anus, which would have been what's described a a third degree tear. The margins of the wound were irregular. And I felt that the tear was quite recent. It was still bleeding at the time that I saw the wound. The hymen itself had been, or maidenhead had been included in the tear or in the laceration."
Dr. Clemons then testified that he recommended surgical repairs.
The second doctor, Dr. Capps, was a member of the staff of Tampa General Hospital and a resident in gynecology. He was the treating physician who surgically repaired the injuries testified to by Dr. Clemons. Dr. Capps testified as follows:
"Q Doctor, would you described, and you may refer to your notes to refresh your memory if you care to, describe the nature of the injury, if any, that you found to this baby.
A Yes, sir. In the area where she had the laceration, the lacerations are categorized by degrees. And this child had a second degree laceration of the vagina and perineum, meaning that it extended through the vaginal mucose, through the introitus, which is the opening in the vagina, and down to but not through the anal sphincter.
* * * * * *
Q Can you give the jury an idea in terms of inches how deep this wound extended?
* * * * * *
A It extended up the vagina for about an inch and a half and down towards the anus for about three-quarters of an inch. But you have to understand this is in the resting state, so there is a lot of elasticity and it would stretch out. So you can make it be any length that you intended it to be. But in the resting state those would be the dimensions."
We again note, at this point, that we are called upon to determine the sufficiency of the prima facie showing of the corpus delicti independently of the confession itself. Unfortunately, the case was not as well tried below as it perhaps ought to have been. Accordingly, the only evidence elicited from the doctors concerning the cause of the injuries described above was that *457 predicated on a hypothetical question which, it must be admitted, relied on the confession for its underlying facts.[2] That hypothetical question, asked of both doctors, is illustrated by the following direct examination of Dr. Capps:
"Q All right, sir. Doctor, I would like for you to, if you would, assume that at approximately 10:00 to 11:00 a.m. on the morning of May 15, that would be some two to three hours prior to your examination of this little girl 
A Yes, sir.
Q  that an adult female forcibly inserted the two, first two fingers of her right hand into the vagina of this Corie Gibson, the infant, and twice inserted her fingers grabbing tissue and whatever is there, turning them and tearing, that is, removing forcibly her fingers from the area of the vagina causing immediate bleeding, and ask you, Doctor, if that type of trauma would be consistent with the findings that you had on the afternoon of May 15, 1973."
Each of the doctors, of course, answered affirmatively that such a hypothetical cause was consistent with the effect he described. No other evidence of causation is found in the record, except that Dr. Clemons did allude to a statement made to him by appellant at the time of his initial examination of the child to the effect that the child had accidentally injured herself while playing with other children. No details of how that injury could or did occur while so playing was related by appellant to the doctor; at least he didn't testify as to any.
We are of the view, notwithstanding, that the foregoing evidence considered entirely independently of, and without reference to, any part of the confession was sufficient from which a trier of fact might infer that the described injury to a fifteen-month-old baby girl was more likely than not brought about by criminal means, i.e., by an assault. The evidence of a corpus delicti at the particular stage of the proceeding with which we are here concerned may be solely circumstantial in character and it is enough if it tends to show a crime was committed.[3] Concededly, that which occurred to the little girl in this case could have occurred innocently and without criminal means. This is often the case with circumstantial evidence; but unless such evidence is solely relied upon to support a conviction, all reasonable hypotheses of innocence need not be excluded.[4] In this light, then, considering the tender age of the child and the nature and extent of the injury described by the doctors, we think a reasonable person, calling upon his common experiences, might well have felt the tendency to conclude criminal causation here. Not necessarily that the injuries were caused by the actual crime ultimately to be proved, but by some crime.[5] That's all that's necessary. The actual crime may be proved later and by other means. The trial judge obviously felt the tendency to conclude some crime was committed here and we cannot say as a matter of law that he erred.
In view whereof, the judgment appealed from should be and the same is hereby affirmed.
HOBSON and GRIMES, JJ., concur.
NOTES
[1] See Schneble v. State (Fla. 1967), 201 So.2d 881; Clark v. State (Fla.App.2d, 1969), 229 So.2d 877.
[2] This is permissible, of course, since the order of proof is not critical so long as the corpus delicti is otherwise independently established ultimately. See Parrish v. State (1925), 90 Fla. 25, 105 So. 130.
[3] See n. 1, supra.
[4] Cf. Burroughs v. State (Fla.App.2d, 1969), 221 So.2d 159.
[5] Indeed, the record reflects from a police officer's testimony that Dr. Clemons initially suspected a possible rape; and that's how the police investigation was begun to begin with which ultimately resulted in appellant's confession herein.