946 So.2d 1270 (2007)
Javier HERNANDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-4048.
District Court of Appeal of Florida, Second District.
January 26, 2007.
*1271 Jorge Leon Chalela, Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Tiffany Gatesh Fearing, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Javier Hernandez appeals his judgment and sentence for sexual battery by a person less than eighteen years of age upon a person less than twelve years of age, section 794.011(2)(b), Florida Statutes (2004). The young victim of the alleged sexual battery and her parents were unavailable at trial and Mr. Hernandez did not have a prior opportunity to cross-examine them. Over timely defense objection, the trial court permitted a nurse who was a member of the local "Child Protection Team" (CPT) to testify at trial concerning statements about the alleged sexual battery made by the child and her parents at an examination arranged by a sheriff's deputy. Because the nurse was acting in concert with law enforcement in questioning the child and her parents to gather information for a potential criminal prosecution, we conclude that their statements to the nurse were testimonial under Crawford v. Washington[1] and Davis v. Washington.[2] We also hold that the trial court erred in admitting Mr. Hernandez's confession into evidence under section 92.565, Florida Statutes (2004), because it failed to make the specific findings of fact required by the statute. For these reasons, we reverse Mr. Hernandez's judgment and sentence, and we remand this case for a new trial.

I. THE FACTS
The child who was the victim of the alleged sexual assault resided in Tampa with her parents. Mr. Hernandez and his sister lived in the same residence as the child and her parents. Both Mr. Hernandez and the child's family had come to the United States from Mexico. The child spoke some English, but Mr. Hernandez and the child's parents apparently spoke little or none.
In the early morning hours of November 4, 2004, Deputy Steven Connors of the Hillsborough County Sheriff's Office was dispatched to the residence that Mr. Hernandez shared with the child and her parents. Deputy Connors did not speak Spanish, and he was unable to converse *1272 with the child's parents. Deputy Connors called for a Spanish-speaking deputy, and Deputy Ricardo Hernandez arrived at the residence. After Deputy Hernandez spoke with the parents in Spanish, Deputy Connors contacted the CPT to arrange for a sexual assault examination to be performed on the child. Deputy Hernandez then escorted the child and her parents to Tampa General Hospital (TGH) where the examination was to take place.
At TGH, Deputy Hernandez, the child, and her parents met with Sandra Shulman. Ms. Shulman was employed as an advanced registered nurse practitioner with the CPT at TGH. Ms. Shulman performed sexual assault examinations on children on a regular basis. She also regularly testified in court as an expert in the area of medical examinations of children who have been the victim of a sexual assault.
Ms. Shulman began by speaking with Deputy Hernandez to "just get basic information." She then spoke with the parents to obtain the child's medical history. Although the record is silent on this point, one might infer that Deputy Hernandez acted as an interpreter for Ms. Shulman and the parents. After speaking with the parents, Ms. Shulman interviewed the child to obtain a history. Ms. Shulman began the process of taking the history by asking the child open-ended questions about what had happened to her. Next, Ms. Shulman used a standard questionnaire to ask the child about a series of specific acts of sexual abuse to which the child was asked to answer "Yes," "No," or otherwise respond. After taking the history, Ms. Shulman performed a physical examination of the child. The significant findings on the physical examination included a tissue tear at the posterior fourchette extending down to the perineum. At the time Ms. Shulman made her initial examination of the child, this tissue tear was already healing. On a second examination of the child conducted five days later, Ms. Shulman found that the tear had completely healed.
The parents informed Ms. Shulman that the alleged incident had occurred on October 28, 2004, one week earlier. Because of the lapse of time between the date of the alleged incident and the date of the examination, Ms. Shulman did not collect any samples or specimens for forensic purposes. She did obtain specimens to test for the presence of sexually transmitted diseases. There is no indication in the record that Ms. Shulman treated the child for her injuries or that she referred the child to a physician for further examination or treatment.
After Ms. Shulman had completed her examination, Deputy Hernandez escorted the child and her parents back to their residence. He then went to the district office where Mr. Hernandez had been taken. Upon his arrival at the district office, Deputy Hernandez acted as an interpreter for Detective Thomas Pettis. Detective Pettis had been assigned to interview Mr. Hernandez. Deputy Hernandez gave Mr. Hernandez the Miranda[3] warning in Spanish. Mr. Hernandez indicated that he understood his rights and was willing to speak to Detective Pettis. But soon after the interview began, the deputies realized that Mr. Hernandez was only sixteen years old. Accordingly, they discontinued the interview until his adult sister arrived at the district office. Detective Pettis then proceeded with the interview in the presence of Mr. Hernandez's sister. In the meantime, a shift change occurred, and Deputy Carlos Cuevas assumed the responsibility for interpreting.
*1273 Mr. Hernandez made an oral statement about the incident, which he said had occurred about eight days earlier. In his oral statement, Mr. Hernandez admitted that he had penetrated the child's vagina with his penis. At the request of Detective Pettis, Mr. Hernandez also wrote a statement in Spanish describing the incident. Once Mr. Hernandez had made his oral and written statements, Detective Pettis called the CPT medical clinic and inquired about the results of the sexual assault examination that had been performed earlier on the child. Based on the results of Ms. Shulman's examination, Detective Pettis charged Mr. Hernandez with the commission of a sexual battery by a person less than eighteen years of age upon a person less than twelve years of age.

II. PRETRIAL MATTERS
After these events, the child and her parents vacated their residence and could not be located. The state attorney's office assigned an investigator to look for the child and her parents. The investigator began work on the assignment on January 31, 2005, but he was unable to find them. He surmised that the child and her parents "could possibly be in Mexico."
Prior to trial, the State filed a motion to determine the admissibility in evidence of Mr. Hernandez's statements under section 92.565. In its motion, the State alleged that the child had "left the country" and that Mr. Hernandez's "statements are corroborated by the physical findings of Sandi [sic] Shulman, the nurse practitioner that examined the victim shortly after the incident." In its motion, the State sought the entry of an order permitting it to introduce Mr. Hernandez's oral and written statements into evidence at trial without proof of the corpus delicti of the alleged sexual battery.
The case went to trial in June 2005. On the day the trial began, the trial court heard and denied Mr. Hernandez's motion to suppress his statements. After jury selection was completed, the trial court took up what the prosecutor referred to as the "confession without corpus motion." In support of the motion, the State offered Ms. Shulman's deposition testimony as independent evidence that corroborated Mr. Hernandez's statements. The defense had stipulated to the use of Ms. Shulman's deposition in lieu of live testimony only for the purposes of the motion. Without taking any additional evidence, the trial court found that Mr. Hernandez's statements were trustworthy. The trial court based its ruling exclusively on what it had "heard this morning in the motion to suppress." The trial court expressly disclaimed any reliance on Ms. Shulman's deposition as a basis for granting the motion. The trial court also found that "the State is unable to show the existence of each element of the crime because we don't have a victim who has testified." Based on these two findings, the trial court granted the State's motion.

III. THE TRIAL
At Mr. Hernandez's trial, there was no physical evidence that linked him to the alleged sexual battery. Mr. Hernandez did not take the stand in his own defense. The trial was relatively brief. Seven witnesses testified for the State. The four deputies told the jury about their respective roles in the investigation. Deputy Hernandez and Deputy Cuevas testified about the oral and written statements that Mr. Hernandez had made. A Spanish interpreter translated Mr. Hernandez's written statement from Spanish into English and read it for the jury. The investigator for the state attorney's office who had been assigned to locate the child and her *1274 parents testified about his unsuccessful efforts to locate them. In the child's absence, Ms. Shulman became the State's main witness to the facts of the case.
Ms. Shulman told the jury about her role on the CPT and the methods she generally employs to perform examinations on child victims of sexual assaults. Ms. Shulman also related the findings she had made upon her physical examination of the child. Based on these findings, Ms. Shulman opined that the child had experienced genital trauma that was consistent with her history of sexual abuse. Ms. Shulman was not askedand she did not offeran opinion on whether the child's injuries were also inconsistent with an accidental injury. Ms. Shulman also testified at some length to the child's account of the incident. In Ms. Shulman's retelling of the child's account, the child did not identify the perpetrator by name but merely referred to the perpetrator as "he." Ms. Shulman also reviewed the standard questionnaire she had used to ask the child about specific acts of sexual abuse and recited the child's responses to each item. Finally, Ms. Shulman testified that the child's parents had told her that the incident had occurred on October 28, 2004. There was no explanation at trial concerning how the parents had determined this date as the date of the alleged incident.
The jury found Mr. Hernandez guilty of sexual battery as charged. The jury's verdict included a special finding that he had penetrated the child's vagina with his penis. After the trial court adjudicated Mr. Hernandez guilty and sentenced him, he filed this appeal.

IV. THE ISSUES
On appeal, Mr. Hernandez raises two issues that have merit. First, he argues that the trial court erred in admitting his oral and written statements into evidence under section 92.565 without first making the specific findings of fact required by the statute. We agree. Second, Mr. Hernandez contends that the trial court erred in permitting Ms. Shulman to testify at trial concerning statements made by the child and her parents about the alleged sexual battery. Once again, we agree. We reject the remainder of Mr. Hernandez's arguments without discussion. We will address separately the arguments that have merit.

V. THE SECTION 92.565 ISSUE
A. Section 92.565 and the Requirement for Specific Findings of Fact
The State moved for a pretrial order authorizing it to present proof at trial of Mr. Hernandez's oral and written statements without first establishing the corpus delicti of the crime.[4] The State made its "confession without corpus motion" under the authority of section 92.565. This statutetitled "Admissibility of confession in sexual abuse cases"provides:
(1) As used in this section, the term "sexual abuse" means an act of a sexual nature or sexual act that may be prosecuted under any law of this state, including those offenses specifically designated in subsection (2).
(2) In any criminal action in which the defendant is charged with a crime against a victim under s. 794.011; s. 794.05; s. 800.04; s. 826.04; s. 827.03, *1275 involving sexual abuse; s. 827.04, involving sexual abuse; or s. 827.071, or any other crime involving sexual abuse of another, or with any attempt, solicitation, or conspiracy to commit any of these crimes, the defendant's memorialized confession or admission is admissible during trial without the state having to prove a corpus delicti of the crime if the court finds in a hearing conducted outside the presence of the jury that the state is unable to show the existence of each element of the crime, and having so found, further finds that the defendant's confession or admission is trustworthy. Factors which may be relevant in determining whether the state is unable to show the existence of each element of the crime include, but are not limited to, the fact that, at the time the crime was committed, the victim was:
(a) Physically helpless, mentally incapacitated, or mentally defective, as those terms are defined in s. 794.011;
(b) Physically incapacitated due to age, infirmity, or any other cause; or
(c) Less than 12 years of age.
(3) Before the court admits the defendant's confession or admission, the state must prove by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement by the defendant. Hearsay evidence is admissible during the presentation of evidence at the hearing. In making its determination, the court may consider all relevant corroborating evidence, including the defendant's statements.
(4) The court shall make specific findings of fact, on the record, for the basis of its ruling.
When section 92.565 is properly invoked, it replaces the corpus delicti doctrine with the trustworthiness doctrine with respect to the offenses listed in the statute. See Geiger v. State, 907 So.2d 668, 674 (Fla. 2d DCA 2005). In the circumstances outlined in section 92.565, "the State may admit a defendant's confession into evidence without first proving corpus delicti if sufficient corroborating evidence is presented that tends to establish the trustworthiness of the confession." Id.
The First District has observed that section 92.565 "serves the same general purpose as the corpus delicti rule but it contains a different set of safeguards." Bradley v. State, 918 So.2d 337, 340 (Fla. 1st DCA 2005). The statutory safeguards requireamong other thingsthat the trial court must find (1) "that the [S]tate is unable to show the existence of each element of the crime" and (2) "that the defendant's confession or admission is trustworthy." § 92.565(2). See Bradley, 918 So.2d at 340. The trial court must make specific findings of fact on the record in support of its ruling. § 92.565(4). See Bradley, 918 So.2d at 340; State v. Dionne, 814 So.2d 1087, 1091 (Fla. 5th DCA 2002).
B. The Application of Section 92.565 to the Facts of this Case
In this case, the trial court found that the State was "unable to show the existence of each element of the crime because we don't have a victim who has testified." Although the trial court's finding on this issue failed to consider the effect of Ms. Shulman's testimony on the State's ability to establish the elements of the crime, we conclude that this finding is sufficiently specific for purposes of our review. However, we reach a different conclusion about the trial court's finding on the issue of the trustworthiness of Mr. Hernandez's statements. On the trustworthiness issue, the trial court's finding was as follows:
Based upon what I heard this morning in the motion to suppress I think I can *1276 go back and consider that now just as though it was testified to again. I find that the admission that was testified to this morning is trustworthy.
Unfortunately, the trial court did not specify what it had heard at the suppression hearing that led it to the conclusion that Mr. Hernandez's statements were trustworthy. The statute mandates "specific findings of fact, on the record," stating the basis of the trial court's ruling. § 92.565(4). Here, the trial court's finding is conclusory. The trial court merely recited the language of the statute instead of making case-specific findings on the critical issue of trustworthiness. We conclude that the trial court's repetition of the "boilerplate language of the statute" is insufficient. Cf. Hopkins v. State, 632 So.2d 1372, 1377 (Fla.1994) (construing similar requirement for specific findings of fact, on the record, prior to the admission of hearsay statements by child victims of abuse in accordance with section 90.803(23), Florida Statutes (1989)). Because the trial court failed to make the specific findings of fact on the record that were required under section 92.565, we are constrained to reverse and remand for a new trial. On remand, the trial court may revisit the issue of the admissibility of Mr. Hernandez's statements under section 92.565. If the trial court does so, it shall make specific findings of fact on the record or in writing to facilitate appellate review.
C. Two Considerations on Remand
Before leaving this issue, we make two observations for the guidance of the trial court and the parties on remand. First, at the hearing on the State's "confession without corpus motion," the State offered the deposition of Ms. Shulman as corroborating evidence that tended to establish the trustworthiness of Mr. Hernandez's statements. The trial court expressly declined to consider Ms. Shulman's deposition testimony. Instead, the trial court appears to have relied exclusively on the content of Mr. Hernandez's statements and the circumstances under which they were made to form an opinion about their trustworthiness.
Before a trial court may admit a defendant's confession or admission into evidence under section 92.565, the State "must prove by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement by the defendant." § 92.565(3) (emphasis added). To "corroborate" means "[t]o strengthen or support with other evidence; make more certain." The American Heritage Dictionary of the English Language 412 (4th ed. 2000). Thus a confession cannot corroborate itself. This court has previously held that a statement cannot be deemed "trustworthy" under section 92.565 absent independent evidence establishing that a crime occurred or that the defendant's admissions to criminal conduct are trustworthy. See Geiger, 907 So.2d at 674-76.[5]See also B.P. v. State, 815 So.2d 728, 730 (Fla. 5th DCA 2002) (reversing conviction where the defendant's confession was admitted under section 92.565 in the absence of any other evidence that the offense charged had been committed); Peterson v. State, 810 So.2d 1095, 1098 (Fla. 5th DCA 2002) (detailing the independent evidence considered by the trial court that corroborated the defendant's confession before the confession was admitted into evidence under section 92.565). Ms. Shulman's deposition was the only independent evidence that *1277 the State offered at the motion hearing to corroborate Mr. Hernandez's statements. For this reason, the trial court may wish to reconsider its decision to reject Ms. Shulman's deposition testimony when it revisits the State's motion under section 92.565.
Second, if the trial court decides to review Ms. Shulman's deposition on remand, then it will also be called upon to decide whether to consider her account of the declarations by the child and her parents about the incident. In this context, any consideration by the trial court of these declarations would be for the limited purpose of determining the admissibility of Mr. Hernandez's statements under section 92.565. The parties have argued this issue extensively in the trial court and in the briefs that they have submitted to this court. The trial court had no occasion to reach this issue previously because it did not consider Ms. Shulman's deposition testimony. Because the trial court has never made a ruling on this issue, we express no opinion on it.

VI. THE CONFRONTATION ISSUE
A. The Standard of Review
An appellate court employs a mixed standard of review in considering a trial court's ruling on the admissibility of evidence over an objection based on the Confrontation Clause.[6] The trial court's determination of historical fact enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. However, the trial court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. See Lilly v. Virginia, 527 U.S. 116, 136-37, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (plurality opinion); Wall v. State, 184 S.W.3d 730, 742-43 (Tex.Crim. App.2006). In this case, the trial court did not make any findings of fact in ruling on Mr. Hernandez's objection based on the Confrontation Clause. There was no question about the unavailability of the child and her parents, and the State did not contend that Mr. Hernandez had a prior opportunity to cross-examine them. Here, we consider the application of the Confrontation Clause to facts in the record that are undisputed. Thus we address a question of law, and our review is de novo. See Sproule v. State, 927 So.2d 46, 47 (Fla. 4th DCA 2006).
B. The Parties' Arguments at Trial and the Trial Court's Ruling
Before Ms. Shulman began to testify, defense counsel objected to any testimony by her that recounted statements made by the child or her parents about the alleged incident of sexual abuse. The basis of defense counsel's objection was the Confrontation Clause. Defense counsel cited the United States Supreme Court's opinion in Crawford, 541 U.S. 36, 124 S.Ct. 1354, in support of the objection.[7] The prosecutor responded that the statements made to Ms. Shulman were nontestimonial under Crawford. The prosecutor argued further that the statements were admissible in evidence because they were made for the purposes of medical diagnosis and treatment. See § 90.803(4), Fla. Stat. (2004); Lages v. State, 640 So.2d 151, 153 (Fla. 2d DCA 1994); Williams v. State, *1278 865 So.2d 17, 18-19 (Fla. 4th DCA 2003); State v. Ochoa, 576 So.2d 854, 856-58 (Fla. 3d DCA 1991). The trial court ruled that Ms. Shulman's testimony concerning the statements was admissible and granted the defense a continuing objection to this evidence.
C. Crawford and Davis
Under Crawford, evidence concerning a statement made out of court that is "testimonial" in nature is not admissible in evidence in a criminal prosecution unless the declarant is unavailable and the accused had a prior opportunity to confront and cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. 1354. In this case, the parties agreed that the child and her parents were unavailable to testify at trial. In addition, Mr. Hernandez did not have a prior opportunity to confront and cross-examine the child or her parents.[8] Thus the dispositive question on the confrontation issue in this case is whether the statements by the child and her parents to Ms. Shulman were testimonial in nature.
In Crawford, the United States Supreme Court declined to articulate a comprehensive definition of the term "testimonial." However, the Court did offer some guidance on the meaning of this term. For example, the Court quoted various formulations of the core class of testimonial statements:
"[E]x parte in-court testimony or its functional equivalentthat is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."
541 U.S. at 51-52, 124 S.Ct. 1354 (citations omitted). In addition to these general formulations, *1279 the Court identified ex parte testimony at a preliminary hearing and statements taken by police officers in the course of interrogation as examples of statements that qualified as testimonial. Id. at 52, 124 S.Ct. 1354.
The Court's attempt to define the term "testimonial" in Crawford was deliberately tentative and incomplete. But one may gain some insight into the Court's view of the nature of testimonial statements from the abuses that the Court identified as the evil that the Confrontation Clause was intended to address. In its discussion of the inferences that it drew from history about the meaning of the Sixth Amendment, the Court said:
First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused. It was these practices that the Crown deployed in notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.
Id. at 50, 124 S.Ct. 1354. Expanding on this theme, the Court continued:
An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of court statement.
Id. at 51, 124 S.Ct. 1354. The Court placed particular emphasis on the potential for prosecutorial abuse posed by the "[i]nvolvement of government officers in the production of testimony with an eye toward trial." Id. at 56 n. 7, 124 S.Ct. 1354. Thus Crawford suggests that an out-of-court statement is testimonial when it is made to a government official under circumstances indicating that the statement may be used to provide evidence against an accused in a subsequent criminal prosecution.
Approximately two years after its decision in Crawford, the Court attempted to clarify the distinction between testimonial and nontestimonial statements in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). In Davis, the Court offered the following formulation:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
126 S.Ct. at 2273-74. In Hammon v. Indiana, a separate case reported with Davis,[9] the Court found the statements under review there to be testimonial when it was "entirely clear from the circumstances that the interrogation [by the police] was part of an investigation into possibly criminal past conduct." Id. at 2278. *1280 In considering the statements at issue in Hammon, the Court said:
Both statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed. And both took place some time after the events described were over. Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial.
Id. Thus under Crawfordas clarified by Davisstatements made to a law enforcement officer or other government official are testimonial if the primary purpose for which the statements are made is to provide information about past events for later use in a criminal prosecution. In short, statements made in response to official interrogation have a testimonial aspect when the purpose of the exercise is "to nail down the truth about past criminal events." Id.
It seems safe to say that the Court's clarification of the distinction between testimonial and nontestimonial statements in Davis will not represent the Court's final word on this subject. In its opinion in Davis, the Court said that it was not "attempting to produce an exhaustive classification of all conceivable statementsor even all conceivable statements in response to police interrogationas either testimonial or nontestimonial." Id. at 2273. The Court only went so far as to state that the formulation it offered was sufficient to decide the two cases before it. Id. Because the formulation that the Court offered in Davis is concededly tentative and incomplete, the application of the Davis clarification of Crawford requires that we bear in mind the abuses that the Court has identified as the evil that the Confrontation Clause was designed to address. We turn now to the application of these general principles to the facts of this case.
D. Discussion
1. Introduction: Four Factors Indicative of the Testimonial Nature of the Statements
As we stated previously, the dispositive question on the confrontation issue in this case is whether the statements by the child and her parents to Ms. Shulman were testimonial in nature. To answer this question, we look to whether the questioning by Ms. Shulman of the child and her parents was the functional equivalent of a police interrogation. The State correctly notes that Ms. Shulman was not a government employee. Based on this fact, the State argues that Ms. Shulman's inquiries directed to the child and her parents could not reasonably be considered to be an interrogation by a police agent. We recognize that the questions that Ms. Shulman directed to the child and to her parents were asked in the context of a medical examination to determine whether a sexual battery had occurred. We also appreciate the importance of obtaining an accurate history from the patient to providing optimum medical care. Nevertheless, four factors persuade us that the questions that Ms. Shulman directed to the child and to her parents were the functional equivalent of a police interrogation. These four factors are (1) the effect of the Florida statutes pertinent to the establishment and functioning of the CPT, (2) the nature and extent of law enforcement involvement in the examination of the child by Ms. Shulman at TGH, (3) the purpose of the examination performed by Ms. Shulman in her capacity as a member of the CPT, and (4) the absence of any ongoing emergency at the time Ms. Shulman conducted her examination of the child.
*1281 a. The Legal Status of the CPT as an Arm of Law Enforcement
Ms. Shulman was a member of the CPT at TGH. The CPT is a creature of statute.[10] Under chapter 39, Florida Statutes, the Department of Health establishes the CPT "to receive referrals from the protective investigators and protective supervision staff of the [Department of Children and Family Services] and to provide specialized and supportive services to the program in processing child abuse, abandonment, or neglect cases." § 39.01(13), Fla. Stat. (2004) (emphasis added). In accordance with the statute, the CPT is required to provide a variety of services. The services that the CPT is required to offer specifically include providing "[e]xpert medical, psychological, and related professional testimony in court cases." § 39.303(1)(e) (emphasis added). The CPT is also required to provide "[c]hild protection team assessments that include, as appropriate, medical evaluations, medical consultations, family psychosocial interviews, specialized clinical interviews, or forensic interviews." § 39.303(1)(j) (emphasis added).
Thus, under chapter 39, the CPT is responsible for providing several different services directed to the detection, investigation, and prosecution of child abuse, abandonment, and neglect cases. However, the CPT is more than just a passive service provider. The CPT is also required to contract with local law enforcement agencies concerning how it will comply with the requirements imposed on it by chapter 39. In this regard, section 39.306 provides, in pertinent part:
The [Department of Children and Family Services] shall enter into agreements with the jurisdictionally responsible county sheriffs' offices and local police departments that will assume the lead in conducting any potential criminal investigations arising from allegations of child abuse, abandonment, or neglect. The written agreement must specify how the requirements of this chapter will be met. For the purposes of such agreement, the jurisdictionally responsible law enforcement entity is authorized to share Florida criminal history and local criminal history information that is not otherwise exempt from s. 119.07(1) with the district personnel, authorized agent, or contract provider directly responsible for the child protective investigation and emergency child placement.
Thus the CPT is an integral part of the law enforcement effort in child abuse, abandonment, and neglect cases by both statute and contract. Indeed, the link between the CPT and local law enforcement is so strong that the CPT is authorized by section 39.306 to have direct access to criminal history information.
b. The Involvement of Law Enforcement in the Production of the Statements
In this case, the CPT worked in concert with deputies from the Hillsborough County Sheriff's Office in connection with the investigation of the alleged sexual assault on the child. Initially, Deputy Connors arranged for the CPT to perform a sexual assault examination on the child. Deputy Hernandez escorted the child and her parents to TGH where the examination was to be performed. At TGH, Ms. Shulman spoke with Deputy Hernandez to "just get basic information." Although Deputy Hernandez was not present in the room when Ms. Shulman questioned the child, he remained *1282 at TGH until the examination was completed and then escorted the child and her parents back to their home. Deputy Pettis did not make the decision to charge Mr. Hernandez with an offense until after he had received Ms. Shulman's report concerning the results of her examination.
c. The Purpose of the Examination Conducted by the CPT Nurse
In addition to the close cooperation between Ms. Shulman and the sheriff's deputies, Ms. Shulman performed important law enforcement functions as a member of the CPT. A primary purpose of the sexual assault examination that she performed on the child was to gather facts for use in a potential criminal prosecution against Mr. Hernandez. Ms. Shulman testified that she generally tried "to get as much history as [I] can" because of concerns about "doing forensics." After asking the child open-ended questions about what had happened to her, Ms. Shulman administered a questionnaire about a series of particular acts of sexual abuse. To be sure, the child's answers to some of these questions may have been useful for purposes of medical diagnosis and treatment. Nevertheless, the questions were also calculated to produce a list of specific acts of sexual abuse that a prosecutor might use to prepare one or more charges against Mr. Hernandez. Ms. Shulman's use of a standardized questionnaire to inquire of the child concerning the incident adds a structured aspect to her examination that causes it to more closely resemble a police interrogation. Ms. Shulman also testified that she generally collected specimens for forensic purposes. She omitted to do so in this case only because of the lapse of time between the date of the alleged incident and the date of the examination. The facts demonstrate that Ms. Shulman acted as an arm of law enforcement in conducting the examination of the child.
In considering whether the statements made by the child and her parents were testimonial, we also take note of Ms. Shulman's expectations about becoming a witness in a potential prosecution of Mr. Hernandez. Ms. Shulman regularly appeared in court to give testimony about the results of the examinations that she performed on children. She told the jury that she had been qualified as an expert in the area of child assault medical examinations "[w]ell over a hundred times" and had testified as an expert witness in Hillsborough, Pinellas, Pasco, and Dade counties. Based on Ms. Shulman's background and her focus on forensic issues, there is no doubt that Ms. Shulman reasonably expected that she would be appearing in court to testify against Mr. Hernandez about the results of her examination and the statements made by the child and her parents during the course of the examination.
d. The Absence of Any Ongoing Emergency
Furthermore, there is nothing about the facts of this case to suggest that the statements made by the child and her parents to Ms. Shulman qualify as nontestimonial under Crawford and Davis. When Ms. Shulman questioned the child and her parents, they were in a safe environment at TGH. The single incident of alleged sexual abuse had occurred one week earlier. Moreover, sheriff's deputies had a suspect in custody. Ms. Shulman did not question the child and her parents to enable law enforcement to meet an ongoing emergency. On the contrary, a primary purpose of her questions was to obtain facts about past events pertinent to the prosecution of Mr. Hernandez.
2. The CPT Nurse's Questions Were the Functional Equivalent of Police Interrogation
For these reasons, we conclude that Ms. Shulman's questioning of the child and her *1283 parents was the functional equivalent of a police interrogation. Thus the statements made by the child and her parents to Ms. Shulman were testimonial. See Contreras v. State, 910 So.2d 901, 905-06 (Fla. 4th DCA 2005), review granted, 924 So.2d 810 (Fla.2006) (finding that child victim's videotaped statement to CPT coordinator was testimonial); see also Myrna Raeder, Remember the Ladies and the Children Too: Crawford's Impact on Domestic Violence and Child Abuse Cases, 71 Brook. L.Rev. 311, 381-83 (2005) (describing the adverse impact of Crawford on the use of multidisciplinary forensic teams in child abuse cases); John F. Yetter, Wrestling with Crawford v. Washington and the New Constitutional Law of Confrontation, 78 Fla. B.J. 26, 28-29 (Oct.2004) (noting that members of the CPT "have been treated as members of the extended prosecutorial team"). That the statements made by the child and her parents "may have also had a medical purpose does not change the fact that they were testimonial, because Crawford does not indicate, and logic does not dictate, that multi-purpose statements cannot be testimonial." United States v. Bordeaux, 400 F.3d 548, 556 (8th Cir.2005); see also People v. Sisavath, 118 Cal. App.4th 1396, 13 Cal.Rptr.3d 753, 758 (2004) (test for determining whether statement about sexual abuse made during forensic interview of child victim is testimonial is whether an objective observer would reasonably expect the child's statement to be available for use in a prosecution, and the possibility that forensic interview of child might have been intended for a therapeutic purpose or related to removal proceedings did not matter); State v. Snowden, 385 Md. 64, 867 A.2d 314, 330 (2005) (stating that therapeutic motive or effect of sexual abuse investigator's involvement with children was secondary to overarching investigatory purpose and resulting testimonial nature of statements elicited during forensic interviews). But see State v. Stahl, 111 Ohio St.3d 186, 855 N.E.2d 834, 844-46 (2006) (statements made by victim of sexual assault to nurse practitioner at specialized facility for victims of violent sexual assault were nontestimonial even though facility gathered evidence for potential criminal prosecution where center's primary purpose was to render medical care to its patients). Because the child and her parents were unavailable and because Mr. Hernandez did not have a prior opportunity for cross-examination, it follows that the trial court erred in admitting the statements into evidence over the timely defense objection.
3. The Authority Relied Upon by the State
In support of its position that the statements in question are nontestimonial, the State relies on State v. Vaught, 268 Neb. 316, 682 N.W.2d 284 (2004). In Vaught, family members took a child to a hospital to be examined after learning that the child may have been the victim of a sexual assault. Id. at 286. At the hospital, an emergency room physician examined the child. Id. When the physician asked the child what had happened to her, the child related the details of the assault and named the defendant as the perpetrator. Id. At trial, the physician was allowed to testify over defense objection to the child's statements about the incident. Id. at 286-87. Observing that the only purpose of the examination of the child was to obtain medical treatment, the Supreme Court of Nebraska concluded that the child's statements to the physician were nontestimonial. Id. at 291-92. In reaching this conclusion, the Nebraska court specifically noted that "[t]here was no indication of a purpose to develop testimony for trial, nor was there an indication of government involvement in the initiation or course of the examination." Id. at 291. In similar *1284 cases, other courts have found statements made to medical personnel for the purpose of diagnosis and treatment to be nontestimonial when law enforcement involvement in the production of the statements was either limited or nonexistent and there was no indication of a purpose to collect information for a potential criminal prosecution. See, e.g., State v. Kirby, 280 Conn. 361, 908 A.2d 506, 525-27 (2006) (kidnapping victim's statements made to volunteer emergency medical technician as part of technician's immediate response to and medical assessment of the victim at the scene were nontestimonial); Commonwealth v. DeOliveira, 447 Mass. 56, 849 N.E.2d 218, 225-26 (2006) (child's statements to emergency room physician about sexual assault were nontestimonial); Foley v. State, 914 So.2d 677, 685 (Miss.2005) (child's statements about sexual abuse to various therapists and medical professionals were nontestimonial where defendant failed to argue or show that the therapists and medical professionals had contacted the police or were acting in concert with the police to interrogate the child or to investigate her claims); State v. Moses, 129 Wash.App. 718, 119 P.3d 906, 911-12 (2005) (wife's statements to emergency room physician about attack by her husband were nontestimonial where physician had no role in the investigation of the assault and was not working together with the police to develop testimony for the prosecution). Vaught and similar cases are easily distinguishable based on the different facts in Mr. Hernandez's case. Here, the facts demonstrate substantial official involvement in the production of the statements in question and a definite purpose to gather information for a potential criminal prosecution. These are hallmarks of testimonial statements.
4. The Authorities from Other Jurisdictions
The conclusion that we reach on the confrontation issue in this case is in accord not only with the Fourth District's decision in Contreras but also with the weight of authority in other jurisdictions that have decided cases involving similar facts. See Bordeaux, 400 F.3d. at 556-57 (child's videotaped statements describing sexual assault made to forensic interviewer at interview arranged by law enforcement were testimonial); T.P. v. State, 911 So.2d 1117, 1123-24 (Ala.Crim.App.2004) (child's statements about sexual abuse to interviewer employed by Department of Human Resources at interview that was attended by a sheriff's investigator were testimonial); Sisavath, 13 Cal.Rptr.3d at 757-58 (child's videotaped statements about sexual abuse to forensic interviewer at Multidisciplinary Interview Center that was attended by representatives of prosecutor's office were testimonial); State v. Hooper, ___ Idaho ___, ___, ___ P.2d ___, 2006 WL 2328233 at *4 (Idaho Ct. App. Aug.11, 2006) (child's videotaped statement about sexual assault to nurse at Sexual Trauma Abuse Response Center was testimonial where police arranged the interview and officer watched from another room and suggested additional questions to nurse); Anderson v. State, 833 N.E.2d 119, 125-26 (Ind.Ct.App.2005) (child's statements about sexual assault made to social worker during interviews that were coordinated and directed by police detective were testimonial); State v. Henderson, 35 Kan.App.2d 241, 129 P.3d 646, 653-54 (2006), review granted (Sept. 19, 2006) (child's videotaped statements about sexual assault made during interview conducted by detective and social worker who were both members of Exploited and Missing Child Unit were testimonial); Snowden, 867 A.2d at 325-30 (children's statements describing inappropriate sexual contacts made to sexual abuse investigator during interviews arranged *1285 and attended by a police detective were testimonial); State v. Justus, 205 S.W.3d 872, 880-81 (Mo.2006) (child's statements describing sexual abuse during interviews conducted by child abuse investigator for division of family services and by licensed social worker employed at a children's advocacy center were testimonial); Flores v. State, 121 Nev. 706, 120 P.3d 1170, 1178-79 (2005) (child's statements to a police child abuse investigator and a child protective services investigator concerning her mother's attack on a sibling were testimonial); State v. Romero, 139 N.M. 386, 133 P.3d 842, 858-60 (N.M.Ct.App.2006) (woman's statements describing sexual battery to sexual assault nurse examiner during interview and physical examination arranged by police detective were testimonial); State v. Mack, 337 Or. 586, 101 P.3d 349, 352-53 (2004) (child's statements about defendant's killing of child's brother made during videotaped interviews conducted by Department of Human Services worker at the direction of the police were testimonial); State v. Blue, 717 N.W.2d 558, 564-65 (N.D.2006) (child's videotaped statements describing sexual assault to a forensic interviewer made while police officer watched the interview on television from another room were testimonial); Rangel v. State, 199 S.W.3d 523, 532-35 (Tex.App. 2006) (child's statements describing sexual assault during videotaped interview conducted by a Child Protective Services investigator were testimonial). But see People v. Vigil, 127 P.3d 916, 921-26 (Colo.2006) (en banc) (child's statements describing sexual assault to doctor who performed forensic sexual assault examination of child at hospital were nontestimonial even though doctor was a member of the child protection team and a police officer had arranged for the examination to be performed and had spoken with the doctor before he performed the examination); People v. T.T. (In re T.T.), 351 Ill.App.3d 976, 287 Ill.Dec. 145, 815 N.E.2d 789, 803-05 (2004) (child's statements to physician describing the cause of symptoms or pain or the general character of a sexual assaultbut not the child's statements identifying the defendant as the perpetrator of the assaultwere nontestimonial even though the child was referred to the physician for examination by the Department of Children and Family Services and the physician was a member of a child protection unit at the hospital where the examination of the child was conducted); People v. Geno, 261 Mich. App. 624, 683 N.W.2d 687, 691-92 (2004) (child's statements about sexual assault made to executive director of Children's Assessment Center, who was not a government employee, were nontestimonial even though Children's Protective Services had arranged for the assessment and interview of the child at the Center); State v. Scacchetti, 711 N.W.2d 508, 514-16 (Minn.2006) (child's statements describing sexual assault to pediatric nurse practitioner employed by children's resource center during examinations at a hospital and at the center's office were nontestimonial); Stahl, 855 N.E.2d at 839-41, 845 (adult woman's statements describing sexual battery to nurse during examination at a specialized facility designed to provide expert care to victims of violent sexual assault were nontestimonial even though investigating police officer arranged and attended the examination).
5. The State Has Not Shown the Error to be Harmless
Finally, we conclude that the State has failed to show beyond a reasonable doubt that the error in admitting Ms. Shulman's testimony recounting the statements made by the child and her parents did not affect the verdict. See State v. DiGuilio, 491 *1286 So.2d 1129, 1138-39 (Fla.1986). Accordingly, Mr. Hernandez is also entitled to a new trial as a result of our disposition of the Confrontation Clause issue.
Reversed and remanded for a new trial.
WHATLEY and SILBERMAN, JJ., Concur.
NOTES
[1] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The parties have assumedboth in the trial court and in this courtthat the State was unable to establish the corpus delicti of the offense for which Mr. Hernandez was on trial independently of his statements. Therefore, we do not address the issue of whether the independent evidence that the State presented at trial through Ms. Shulman's testimony was sufficient to establish the corpus delicti of the crime. See, e.g., Hester v. State, 310 So.2d 455, 457 (Fla. 2d DCA 1975); State v. Ochoa, 576 So.2d 854, 859 n. 13 (Fla. 3d DCA 1991).
[5] In fairness to the trial court, we note that this court's decision in Geiger was not issued until after Mr. Hernandez's case went to trial.
[6] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.
[7] When Mr. Hernandez's case went to trial, the Court had not yet issued its opinion in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), which clarified the distinction between testimonial and nontestimonial statements.
[8] We have not overlooked the State's argument that the Confrontation Clause is not implicated in Mr. Hernandez's case because he had a prior opportunity to cross-examine the child and her parents. We reject this argument on two grounds. First, the State makes this argument for the first time on appeal. At trial, the State's response to the defense objection was limited to the argument that the challenged statements were nontestimonial and that they were properly admissible under section 90.803(4). Second, the State's argument is not supported by the facts. The State does not claim that Mr. Hernandez actually confronted and cross-examined the child and her parents at a pretrial deposition or at some other proceeding. Instead, the State suggests that the mere existence of a right to take a pretrial deposition under Florida Rule of Criminal Procedure 3.220(h) qualifies as a prior opportunity for confrontation and cross-examination under Crawford. Cf. Belvin v. State, 922 So.2d 1046, 1053 (Fla. 4th DCA 2006) (rejecting a similar argument and noting that its adoption would require the court to hold "that the Florida discovery rule effectively eliminates the constitutional requirements announced in Crawford, so long as the state can show that the declarant was available for deposition at some time before the trial") (en banc). Here, our record indicates that both the defense and the State attempted to locate the child and her parents without any success. Although the record does not reflect when the child and her parents left the Tampa area, they were gone at the end of January 2005 when the State's investigator began looking for them. Under these circumstances, any effort to depose the child and her parents would undoubtedly have been futile. For these reasons, we need not address the rather startling proposition that the right to take a pretrial deposition under the Florida Rules of Criminal Procedure qualifies as a prior opportunity for confrontation and cross-examination under Crawford.
[9] The Supreme Court considered Davis and Hammon together and reported its decisions in one opinion. Davis, 126 S.Ct. at 2270.
[10] Our discussion of the statutory scheme governing the CPT follows the astute analysis by Judge Farmer for the majority in Contreras v. State, 910 So.2d 901, 905 (Fla. 4th DCA 2005), review granted, 924 So.2d 810 (Fla. 2006).