907 So.2d 668 (2005)
Cletus GEIGER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-2474.
District Court of Appeal of Florida, Second District.
July 29, 2005.
*669 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jonathan P. Hurley, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Cletus Geiger appeals the conviction and sentence entered following his no contest plea to sexual battery on a mentally defective person. He reserved the right to appeal the denial of his motion to dismiss and his motion challenging the constitutionality of section 92.565, Florida Statutes (2003), which addresses the admissibility of confessions in sexual abuse cases.
The State filed charges against Geiger after he made incriminating statements. We conclude that under section 92.565, the statements would have been inadmissible at trial due to the absence of corroborating evidence. Because the State had no other evidence establishing that a crime had occurred, the trial court should have granted Geiger's motion to dismiss. Therefore we reverse and remand for entry of an order of dismissal. Because this case can be resolved without determining constitutional issues, we do not address Geiger's constitutional challenge to section 92.565. See State v. Boyd, 846 So.2d 458, 459-60 (Fla. 2003); Matthews v. Weinberg, 645 So.2d 487, 488 (Fla. 2d DCA 1994).

FACTUAL BACKGROUND
Geiger was a certified nursing assistant at Quality Healthcare Center in North Port. His duties included feeding, dressing, and bathing patients. In July 2003, Geiger told an elder at his church that he had exposed himself to one of the patients at the facility and that he had placed his penis into the mouth of another patient. The church elder reported these statements through the Florida Abuse Hotline, resulting in an investigation by the Florida Department of Children and Family Services. When the facility's administrator and its director of nursing learned of Geiger's statements they contacted Geiger, who repeated his statements to them. Geiger later spoke with a police detective, again admitting to improper conduct with the patients. The State charged Geiger with *670 one count of sexual battery and one count of lewd or lascivious exhibition.
Geiger filed a sworn motion to dismiss, contending that apart from his statements there was no proof that he committed any crime. The motion asserted that there were no witnesses to the charged crimes; that the patients, who both suffer from Alzheimer's disease, were incapable of telling anyone about the incidents; and that there was no physical evidence to corroborate the charged crimes. The motion concluded that the undisputed facts did not establish a prima facie case of guilt.
Both the State and Geiger filed motions for a hearing to determine the trustworthiness of Geiger's statements for admission at trial pursuant to section 92.565. Geiger asserted and the State acknowledged that the patients were unable to tell anyone about what Geiger might have done and were unable to testify due to mental and physical disabilities; that there were no witnesses or physical evidence linking Geiger to the charged crimes; and that the only evidence that the alleged incidents occurred was Geiger's statements. The State added that "there is no known forensic evidence indicating that sexual contact took place" and that medical examinations on the victims were inconclusive.

SECTION 92.565 AND THE EVIDENTIARY HEARING
Section 92.565(2) provides that when a defendant is charged with committing a specified crime, including sexual battery,
the defendant's memorialized confession or admission is admissible during trial without the state having to prove a corpus delicti of the crime if the court finds in a hearing conducted outside the presence of the jury that the state is unable to show the existence of each element of the crime, and having so found, further finds that the defendant's confession or admission is trustworthy. Factors which may be relevant in determining whether the state is unable to show the existence of each element of the crime include, but are not limited to, the fact that, at the time the crime was committed, the victim was:
(a) Physically helpless, mentally incapacitated, or mentally defective, as those terms are defined in s. 794.011;
(b) Physically incapacitated due to age, infirmity, or any other cause; or
(c) Less than 12 years of age.
Section 92.565(3) addresses the need for corroborating evidence of the trustworthiness of the confession or admission as follows:
Before the court admits the defendant's confession or admission, the state must prove by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement by the defendant. Hearsay evidence is admissible during the presentation of evidence at the hearing. In making its determination, the court may consider all relevant corroborating evidence, including the defendant's statements.
Pursuant to section 92.565, the trial court held an evidentiary hearing to determine the trustworthiness of Geiger's statements. The State established that at the time of the alleged crimes, the victims suffered from total dementia and were unable to communicate rationally. Geiger was the sole caretaker of the victims during the night shift and would have had the opportunity to commit the charged crimes. The State introduced Geiger's recorded statement to the police in which he admitted to the incidents, described the incidents in detail, and claimed that the victims had communicated their desire to *671 have sex with him. The State presented evidence that Geiger was not coerced and freely made each of his admissions.
The State also introduced into evidence a letter from Geiger to the facility's director of nursing that contained his request for a change from the night shift to the day shift due to "benifits [sic] to my health and family life." The State argued that Geiger sent the letter about ten days to two weeks before the alleged crimes took place and that it showed Geiger's state of mind. Based on Geiger's statements, the State contended that Geiger asked for the shift change because "[h]e knew that there was a temptation. He was having trouble resisting that temptation."
The defense elicited testimony from Dr. Eddy Regnier, a clinical psychologist who examined Geiger, reviewed his medical records, and spoke with his wife. Dr. Regnier determined that Geiger was competent to proceed in the case and that he was not insane at the time of the alleged offenses. However, Dr. Regnier diagnosed Geiger with major depression with psychotic features and anxiety disorder, and he noted that Geiger had abused alcohol, sedatives, hypnotics, and other drugs in the past.
Dr. Regnier noted that Geiger had a breakdown and was hospitalized in 1975 and diagnosed with schizophrenia. The diagnosis was later revised to major depression with psychotic features. Because of the "psychotic break" in 1975, Geiger was given antipsychotic medication. He had been on a range of medications, but he never consistently followed a medication regimen because of side effects. He had ceased the medication years before the alleged crimes. During the 1975 hospitalization, Geiger also began a "mucusless diet,"[1] which resulted in rapid weight loss.
Dr. Regnier testified that Geiger did not have another psychotic episode until just before or around the time that the alleged crimes occurred. He learned from Geiger's wife that Geiger had resumed the mucusless diet and had become more withdrawn and obsessed about his diet. Geiger had the idea that the women at the nursing home, who were unresponsive, were trying to communicate that they wanted sexual relations with him. Dr. Regnier stated that "[t]he idea that he was having these kinds of discussions or beliefs about people who were basically unresponsive is quirky and may, in fact, represent some psychotic thinking." Further, Dr. Regnier noted that together with "isolation at home, this abrupt change in his pattern of behavior suggests that something psychological is going on."
Dr. Regnier stated that a person making a false confession is "quite a common phenomenon." Persons with delusions, including those of a sexual nature, "firmly believe that these events are true and will tell others in a way to warn them, in a way to try to get help for themselves." He added that psychotic individuals tell the same story with amazing accuracy over and over again. He stated that Geiger's admissions could be a fantasy or the result of a mental disorder. Based on Geiger's having a prior mental disorder and breakdown that resulted in hospitalization, his purported behavior changes, and his belief that the women were communicating with him, Geiger's repeated statements could be due to a mental disorder or fantasy, or the "fabrication of a diseased mind."
At the conclusion of the hearing, the trial court observed that no one knew that any crime had occurred apart from Geiger's *672 statements. The court then stated that there was "quite a bit of indicia of reliability"[2] concerning Geiger's statements. The court observed that Geiger's statement, that the noncommunicative women had indicated they wanted the sexual contact, was a double-edged sword. The court indicated that this claim might somehow have legitimized what Geiger did: "He was doing something, quote, to satisfy these woman's [sic] sexual needs or desires, as bizarre as that might be, and it's quite possible that he would think of that as their consent or as being a defense."
The trial court commented that Geiger's statement to a church elder was because Geiger "thought, just like going into a confessional, you get right with God, but you don't necessarily expect to get right with the law or with the community." The court stated that another indicia of reliability was that Geiger spontaneously made consistent statements to the church elder and others. The court added that Geiger's letter to change his hours was "because he felt the urges and the need to have  during the day that he wouldn't have the opportunity and probably not the inclination, and so that's why that letter was a request to have his hours changed." The trial court concluded that for those reasons, it was "satisfied by a preponderance of the evidence that the statement is trustworthy" under section 92.565.
The trial court later entered its orders denying Geiger's motion to dismiss the sexual battery charge and his motion challenging the constitutionality of section 92.565. The court dismissed the lewd and lascivious exhibition charge, but that dismissal is not before us on appeal.

THE CORPUS DELICTI RULE
The Florida Supreme Court has described the corpus delicti rule as follows:
It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another. This usually requires the identity of the victim of the crime. A person's confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime. The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication.

State v. Allen, 335 So.2d 823, 825 (Fla. 1976) (footnote omitted) (emphasis added). Traditional application of the corpus delicti rule requires the State to "`at least show the existence of each element of the crime' to authorize the introduction of a defendant's admission or confession." State v. Colorado, 890 So.2d 468, 470 (Fla. 2d DCA 2004) (quoting Allen, 335 So.2d at 825). In Chaparro v. State, 873 So.2d 631, 633 (Fla. 2d DCA 2004), this court reiterated that without independently established corpus delecti, a defendant's admissions or confessions cannot be admitted into evidence. "The primary purpose behind the rule `is to protect a defendant from being convicted of a nonexistent crime due to "derangement, *673 mistake or official fabrication."'" Id. (citations omitted).
The corpus delicti rule has come under criticism, and several commentators have called for its replacement by the trustworthiness doctrine, which is used in the federal court system and in some other states. See, e.g., Burks v. State, 613 So.2d 441, 445-46 (Fla.1993) (Shaw, J., concurring in part and dissenting in part). Justice Shaw stated that the requirement that the State offer independent evidence of each element of an offense before allowing the State to admit a defendant's confession was "a technicality that impedes rather than fosters the search for the truth." Id. at 446. He suggested that the more workable rule is that used by the federal courts and elsewhere, that "the evidence independent of defendant's statements need not prove the corpus delicti as long as the government introduces substantial independent evidence which would tend to establish the trustworthiness of the defendant's statements." Id.

THE TRUSTWORTHINESS DOCTRINE
In Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the United States Supreme Court rejected the traditional corpus delicti rule for the trustworthiness doctrine. Under that doctrine, a defendant's admission or confession may be used to support a conviction if sufficient independent evidence corroborates the admission or confession so as to establish its trustworthiness. Id. at 93, 75 S.Ct. 158. In discussing the quantum of corroborative evidence required, the Court stated:
[W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.
Id. (citation omitted). The Court observed that in the case before it there was substantial independent evidence establishing the trustworthiness of Opper's admission and one of the two elements of corpus delicti. Id. at 93-94, 75 S.Ct. 158.
In Smith v. United States, 348 U.S. 147, 152, 75 S.Ct. 194, 99 L.Ed. 192 (1954), the Court reiterated "[t]he general rule that an accused may not be convicted on his own uncorroborated confession." Concerning the nature and quantity of corroborative evidence required, the Court stated:
In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone, and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged. We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession *674 itself and thereby prove the offense "through" the statements of the accused.
Id. at 156, 75 S.Ct. 194 (citations omitted).
In United States v. Lopez-Alvarez, 970 F.2d 583, 592 (9th Cir.1992), the Ninth Circuit concluded that the corroboration requirement of Opper is two-pronged:
[F]irst, although the state need not introduce independent evidence of the corpus delicti in conformance with the traditional test, it must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred. Second, it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable. Only when both these prongs are satisfied will a jury be "sufficiently justified" in believing the truth of a criminal admission; only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission.
The court explained that while there must be independent verification that criminal conduct occurred,
the state no longer need introduce independent, tangible evidence supporting every element of the corpus delicti. Instead, the state is required to support independently only the gravamen of the offense  the existence of the injury that forms the core of the offense and a link to a criminal actor  with tangible evidence.
Id. at 591; see also Wong Sun v. United States, 371 U.S. 471, 489 n. 15, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("Where the crime involves physical damage to person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable.... [O]ne uncorroborated admission by the accused does not, standing alone, corroborate an unverified confession.").
The Fifth District Court of Appeal has noted that "[s]ection 92.565 eliminates corpus delicti as a predicate for the admission of a defendant's confession when the state is unable to show the existence of each element of the offense because the victim is either physically helpless, mentally incapacitated, mentally defective, or physically incapacitated." State v. Dionne, 814 So.2d 1087, 1091 (Fla. 5th DCA 2002). The statute substitutes the trustworthiness standard in place of the corpus delicti rule in the circumstances addressed by the statute. Id. Concerning the difference between the two approaches, the court explained "that the corroboration aspect of corpus delicti is more concerned with the elements of the offense whereas the trustworthiness doctrine is concerned with the trustworthiness of the statements contained within the confession." Id.
We agree that section 92.565 replaces the corpus delicti rule with the trustworthiness doctrine with respect to the enumerated offenses. Therefore, in the circumstances specified by the statute, the State may admit a defendant's confession into evidence without first proving corpus delicti if sufficient corroborating evidence is presented that tends to establish the trustworthiness of the confession.

SUFFICIENCY OF THE CORROBORATIVE EVIDENCE
Geiger argues that the State failed to produce corroborative evidence to establish the trustworthiness of his statements and that the court should have determined that his statements would not be admissible during trial. He further argues that because there was no other evidence *675 of his commission of any crimes, the trial court should have granted his motion to dismiss.
The evidence established that Geiger was the sole caretaker of the alleged victims during his work hours. In addition, the State presented Geiger's letter requesting a shift change. The balance of the evidence consisted of testimony concerning Geiger's employment, the statements that he made to others which led to the charges, and Dr. Regnier's testimony concerning Geiger's mental history and his opinions regarding delusional behavior and false confessions.
In making its findings, the trial court relied on the contents of Geiger's statements and how the statements provided their own trustworthiness. For example, the trial court thought it significant that, based on Geiger's statements, consent could perhaps be used as a defense. The court also found that Geiger's statements were reliable because Geiger voluntarily made the statements to a church elder and others. The court stated that the confession to the elder showed that perhaps Geiger believed his confession was privileged and would let him "get it right with God." However, these findings are not based on independent evidence corroborating the trustworthiness of the statements or establishing that a crime occurred; instead, the court simply viewed the statements as credible based on the statements themselves.
Similarly, the trial court's evaluation of Geiger's letter requesting a shift change  that he sent the letter because he had urges and wanted to avoid the opportunity to act on his inclination  was based on Geiger's statements and not any independent corroborating evidence. The letter itself cites health and family benefits as the basis for the request. Absent Geiger's oral statements, the request for a shift change is at least as consistent with an innocent motivation as any devious one.
Section 92.565(3) provides that the State must prove "that there is sufficient corroborating evidence that tends to establish the trustworthiness" of the defendant's statement and that the court "may consider all relevant corroborating evidence, including the defendant's statements." Here, the State presented no corroborating evidence establishing the trustworthiness of Geiger's statements and no evidence, apart from those statements, that Geiger committed any crime. Instead, the focus of the State's evidence was that Geiger voluntarily repeated his statements to various individuals and that he asked for a shift change.
As discussed previously, although the trustworthiness doctrine does not require independent proof of each element of the crime in order for a confession to be admitted, there must be some evidence that tends to establish the type of harm for which the defendant is being criminally charged. See, e.g., Wong Sun, 371 U.S. at 489 n. 15, 83 S.Ct. 407; Lopez-Alvarez, 970 F.2d at 592. In United States v. Lee, 315 F.Supp.2d 1038 (D.Ariz.2003), the court noted that although the defendant's confession was the only evidence that he touched the victim's genitalia, sufficient circumstantial evidence corroborated the confession. The corroborating evidence included witness observations of the defendant carrying the victim to a bedroom, closing the door, and barring entry into the room for several minutes. After the defendant later opened the door, witnesses found the victim lying on a bed, with a pillow covering her face and upper body. The victim was wearing different pants with her underwear on backwards. Id. at 1040. The court stated that strong circumstantial evidence corroborated the defendant's *676 admission, and it emphasized the following:
If this circumstantial evidence did not exist  if Defendant had merely been at the house that evening and nothing suspicious had been observed by others who were present  then his confession to touching the child would be entirely uncorroborated. There would be no independent evidence to suggest that a crime occurred.
Id. at 1044; see also State v. Polly, 657 N.W.2d 462, 467 (Iowa 2003) (reiterating that the State must offer sufficient proof to corroborate the defendant's confession in order for the confession to serve as a basis for conviction, that corroboration must confirm some material fact connecting the defendant with the crime, and that the State must show that the crime has been committed).
Here, only Geiger's statements suggest that any crime occurred, and Dr. Regnier's testimony addressed why those statements were suspect. Although the State's evidence established that Geiger had the opportunity to engage in criminal conduct, no independent evidence established that a crime occurred or that Geiger's admissions to criminal conduct were trustworthy.

CONCLUSION
Because the State did not present competent, substantial evidence to establish that Geiger's statements were trustworthy, the trial court erred in holding that the statements were admissible pursuant to section 92.565. Moreover, because no evidence existed apart from Geiger's statements to establish that any crime had occurred, the trial court should have granted Geiger's motion to dismiss the sexual battery charge. Therefore, we reverse Geiger's conviction and remand with instructions that the trial court enter an order dismissing the sexual battery charge.
Reversed and remanded.
SALCINES and WALLACE, JJ., Concur.
NOTES
[1] Apparently, the diet involves eating grains, garlic, celery, and raw and cooked onions.
[2] Although section 92.565 requires that a trial court determine whether a defendant's confession or admission is trustworthy, the trial court used the word "reliability" in making its findings. In context, it appears that the trial court was using "reliability" as equivalent to "trustworthy" or "trustworthiness."