NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA, )
)
      Appellant, )
)
v. )    Case No. 2D15-1814
)
KENNETH TUMLINSON, )
)
      Appellee. )
)
_____ )

Opinion filed November 18, 2016.

Appeal from the Circuit Court for
Pasco County; Mary Handsel, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Elba Caridad Martin-
Schomaker, Assistant Attorney General,
Tampa, for Appellant.

Howard L. Dimmig, II, Public Defender,
and Matthew J. Salvia, Assistant Public
Defender, Bartow, for Appellee.


PER CURIAM.

          Because the trial court correctly applied section 92.565, Florida Statutes

(2014), and this court's holding in Geiger v. State, 907 So. 2d 668 (Fla. 2d DCA 2005),

we must affirm its order denying the State's motion to admit statements made by

defendant Kenneth Tumlinson.

Kenneth Tumlinson was charged with lewd or lascivious molestation of a child under twelve years of age after law enforcement discovered and then questioned Tumlinson about his personal journal entries that described sexual contact with a child, J.T. Law enforcement was contacted after Tumlinson's former roommates found the troubling journal entries Tumlinson left behind at their home. Officers from the Largo Police Department then made contact with Tumlinson, who gave the officers a recorded oral and written statement. The detectives confirmed from their conversation with Tumlinson that Tumlinson authored the journals and had spent time with a one-year-old, child, J.T., who is the daughter of an acquaintance in Pasco County.

The State filed a motion to admit Tumlinson's statements under section 92.565. Under section 92.565(2), when a defendant is charged with a crime involving sexual abuse,

> the defendant's memorialized confession or admission is admissible during trial without the state having to prove a corpus delicti of the crime if the court finds in a hearing conducted outside the presence of the jury that the state is unable to show the existence of each element of the crime, and having so found, further finds that the defendant's confession or admission is trustworthy.

But "[b]efore the court admits the defendant's confession or admission, the state must prove by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement by the defendant." § 92.565(3). Hearsay evidence is admissible at the hearing, and the court "may consider all relevant corroborating evidence, including the defendant's statements." § 92.565(3).

Here, the State argued that it was unable to show each element of the crime because the child victim was nonverbal at 1½ years old.  The trial court held two hearings on the State's motion to determine if Tumlinson's statements could be admitted under section 92.565.  At the hearings counsel for the State clarified that the State sought to have all three of Tumlinson's statements admitted: "We want to admit the defendant's statements in the journal and his written and recorded statement to law enforcement."

The State's first witness was the child's mother.  She testified that she lived in New Port Richey with her daughter J.T., J.T.'s father, her mother, sister, mother's boyfriend, and sister's boyfriend.  The sister's boyfriend had a friend, Kenneth Tumlinson, who regularly visited the house.  He was there on a "day to day to day basis for months on end" until July or August 2013.  The mother recalled one instance in which she left the child alone with her sister's boyfriend and Tumlinson: "[Tumlinson] happened to be at the house hanging out with [my sister's boyfriend] so I asked them to watch the baby and I went down to the store to go get her [baby formula]."

A detective from the Largo Police Department testified that she was called to the location where Tumlinson's handwritten journals were found.[1]  The following journal excerpts, dated March 2013, were entered into evidence as exhibits 1 and 2:

> Yesterday I proved to myself that I have really no self-control when it comes to my impulses and no self-discipline in my spiritual practices.  When I was left alone in [J.T.]'s room with her I had reverted back all the way to how I was at 16/17 that I would try to take advantage of others.  A few times I put her on my lap pulling

---

[1]The journals were found in a residence separate from where the alleged molestation occurred.

her away from the TV and imagined how if we were nude we'd be rubbing together.  Then, when she was sitting on the floor I rubbed her diaper over her crotch area imagining as if I were playing with her.  For a moment she seemed a bit confused as to what I was doing then after a bit she pushed my hand away not liking what I was doing and was angry at me (perhaps scared) the rest of the time.  I just hope I haven't lost the poor girl's trust.

Exhibit 1.

I am very glad now because I went over to [my friend's] to hang out and [J.T.] was happy to see me.  I sat in her room most of the time watching TV with her though a good portion of it was spent flirting. (I guess I gotta remember with her age comes a different set of emotional reactions than I am used to or was expecting.)  Anyway, we played and I even managed to kiss her a few times and getting past the snottyness I liked it.  She has such soft lips.  Also, she let me rub her back and leg a bit so some touch is ok for now.  It did occur to me though that she has a little growing to do before she can remotely understand the way I feel and the meaning behind my gestures to her like all the loving energy I sent to her.  She still has much true babyness to her.  I guess my expectations got carried away knowing she can walk now.  Of course on the other hand I am glad I get to see her reach developmental milestones and perhaps even help by adding the stimulation of interacting with her.

Exhibit 2.

The detective testified that she and another detective located and interviewed Tumlinson in August 2013.  She stated that during the interview, Tumlinson admitted that he authored the journals and that he touched the child over her diaper. Tumlinson gave the following written statement:

In regards to my journal entries, they are only that, journal entries.  I use my writing to clear my mind and vent my impulses so I don't act on them.  [J.C.] is the daughter of my friend.  I did not by any means touch her as the journal makes clear of touching her diaper/[illegible], not her.  There have been no incidents of any sort. My journal entry does not imply rubbing her on any part of myself. Again I did not.  Also, there have been no incidents with anyone else at all.

The trial court engaged in a lengthy dialogue with counsel and, as observed by the dissent, at times it appeared that the trial court applied a common law corpus delicti analysis to the evidence. But in making its final ruling, the trial court applied the proper analysis and made the proper findings under section 92.565 and this court's holding in Geiger. The trial court's order was not, as the dissent describes, an application of the corpus delicti rule.

Generally "[a] person's confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime." State v. Allen, 335 So. 2d 823, 825 (Fla. 1976). For that reason, in a criminal prosecution, the State is required to prove corpus delicti independent of the defendant's confession before the confession may be admitted into evidence. Ramirez v. State, 133 So. 3d 648, 651 (Fla. 1st DCA 2014). But section 92.565 contemplates an exception to this rule and "eliminates corpus delicti as a predicate for the admission of a defendant's confession when the state is unable to show the existence of each element of the offense" due to the physical or mental health or age of the victim. State v. Dionne, 814 So. 2d 1087, 1091 (Fla. 5th DCA 2002).

> Section 92.565 serves the same general purpose as the corpus delicti rule but it contains a different set of safeguards. A defendant's confession is admissible in evidence under the statute only if: (1) the offense qualifies as a sexual abuse case; (2) the state is unable as a result of some disability on the part of the victim to prove an element of the crime; (3) the state has proven that the defendant's confession is trustworthy; and (4) the trial court has made specific findings of fact on the issue of trustworthiness.

Bradley v. State, 918 So. 2d 337, 340 (Fla. 1st DCA 2005).

A defendant's confession or admission shall not be admitted under section 92.565 until the State has proven by a preponderance of evidence that there is sufficient

*corroborating* evidence that tends to establish the trustworthiness of the statement. §
92.565(3). As this court has acknowledged—and the dissent ignores—"a confession
cannot corroborate itself," meaning the trial court cannot rely "exclusively on the content
of [the defendant's] statements and the circumstances under which they were made to
form an opinion about their trustworthiness." Hernandez v. State, 946 So. 2d 1270,
1276 (Fla. 2d DCA 2007). So even though section 92.565 replaces the corpus delicti
rule with the "trustworthiness doctrine" and "does not require independent proof of each
element of the crime in order for a confession to be admitted, there must be *some*
*evidence that tends to establish the type of harm for which the defendant is being*
*criminally charged*." Geiger v. Sate, 907 So. 2d 668, 675 (Fla. 2d DCA 2005) (emphasis
added).

This court's application of section 92.565 in Geiger is instructive. In
Geiger, a certified nursing assistant was charged with sexual battery and lewd or
lascivious exhibition after he confessed to an elder at his church that he had committed
sex crimes against his patients. Geiger repeated his confession to the facility's staff and
again to the police. Because Geiger's patients suffered from Alzheimer's disease and
were incapable of describing the abuse, the State filed a motion to have the statements
admitted under section 92.565. The evidence showed that Geiger had ample
opportunity to be alone with the victims. There was also testimony that Geiger suffered
from a mental illness. The trial court granted the State's motion, concluding that the
spontaneous and consistent statements had "quite a bit of indicia of reliability" and were
trustworthy. Id. at 672. "In making its findings, the trial court relied on the contents of

- 6 -

Geiger's statements and how the statements provided their own trustworthiness." Id. at 675.

> For example, the trial court thought it significant that, based on Geiger's statements, consent could perhaps be used as a defense. The court also found that Geiger's statements were reliable because Geiger voluntarily made the statements to a church elder and others. The court stated that the confession to the elder showed that perhaps Geiger believed his confession was privileged and would let him "get it right with God."

Id.

This court reversed. It concluded that the trial court's findings were "not based on independent evidence corroborating the trustworthiness of the statements." Id. The trial court erred when it "simply viewed the statements as credible based on the statements themselves." Id. In short, the State failed to meet its burden under section 92.565 because "the State presented no corroborating evidence establishing the trustworthiness of Geiger's statements and no evidence, apart from those statements, that Geiger committed any crime." Id.

Similarly, here, nothing apart from Tumlinson's journals and oral and written statements—all of which the State sought to have admitted—corroborates those statements. And as the trial court properly noted in its final order, Tumlinson's journal entries and oral and written statements cannot be viewed as independent evidence corroborating the trustworthiness of the statements themselves.

In ruling on the State's motion the trial court made findings in its written order that the State established: "(1) the Defendant is over 18 years of age; (2) that the alleged victim is less than 12 years of age; (3) that the Defendant is a friend of the parents of the victim; (4) that the Defendant visited the victim's home while the child was

present."  The trial court specifically noted that "there was no testimony that the defendant was ever alone with the victim child."  Based on those findings, the trial court made the specific finding under section 92.565 that "the State has failed to prove, by a preponderance of the evidence, the trustworthiness of the Defendant's journal entries."

The dissent asserts that "there was competent, substantial evidence—specifically described by the circuit court during the hearings—that Mr. Tumlinson's confession was sufficiently trustworthy to be admitted."  But in making that assertion, the dissent fails to appreciate the correct legal standard: there must be competent substantial evidence that *corroborates* the confession.  As explained in Geiger, a defendant's mere presence with the victim and opportunity to commit the offense was not sufficient evidence to corroborate the statement under the statute.  Similarly, here that factor, standing alone, is also not sufficient evidence of corroboration.  And the other three factors—that Tumlinson seemed "fine" during the statement, that the interview was in public, and that there was no evidence of a mental impairment—are all factors concerning the actual confession itself.  These factors are not independent evidence of corroboration, and in any event, this court is not permitted to reweigh the evidence.  Accordingly, we conclude that the trial court properly applied section 92.565 and this court's holding in Geiger.

Lastly we write to address the dissent's position that it is "impossible to reconcile the circuit court's finding that Mr. Tumlinson's admission was 'one hundred percent' trustworthy with the court's conclusion that it was not under Geiger."  The trial court's statement during the hearing, "I trust his statements one hundred percent," shows that the trial court could accept the statements at face value—it was not an

application of the legal standard under the statute. When the trial court applied the correct legal standard, it found that the State fell short of its burden.

Because the trial court applied the correct analysis under section 92.565 and this court's holding in Geiger, we are compelled to affirm.

CRENSHAW, J, and DAKAN, STEPHEN L., ASSOCIATE SENIOR JUDGE, Concur. LUCAS, J., Dissents with opinion.

LUCAS, Judge, Dissenting.

Relying upon Geiger v. State, 907 So. 2d 668 (Fla. 2d DCA 2005), the majority affirms the denial of the State's motion to admit the recorded statements of Kenneth Tumlinson, which concerned Mr. Tumlinson's confessions to molesting a thirteen-month-old child. In my view, the circuit court's ruling was erroneously grounded upon the failure of the State to establish the corpus delicti[2] of Mr. Tumlinson's offense, a common law requirement that had no application here. A proper application of section 92.565 and our holding in Geiger compels reversal of the circuit court's error, and so I respectfully dissent.

I.

For several months in 2013, Mr. Tumlinson had spent his days as something of a permanent houseguest in J.T.'s family's house. During his stay there, J.T.'s mother recounted that on one occasion she left J.T. alone with her boyfriend and

---

[2]"[W]hen a confession is relied upon to satisfy the state's burden of proof to establish the defendant's guilt, there must be either direct or circumstantial evidence—apart from the confession—of the so-called corpus delicti of the offense with which he is charged." Ruiz v. State, 388 So. 2d 610, 611 (Fla. 3d DCA 1980) (first citing Smith v. State, 112 So. 70 (1927), then citing Drysdale v. State, 325 So. 2d 80 (Fla. 4th DCA 1976)).

Mr. Tumlinson at the house while she went to run errands. She also recalled that, on more than one occasion, she witnessed Mr. Tumlinson sitting in the house with a baby bottle or wearing adult diapers, behavior she described as "kind of odd." Upon later discovering Mr. Tumlinson's diaries in the house and a subsequent interview of Mr. Tumlinson by police detectives, the State filed an information, charging Mr. Tumlinson with one count of lewd and lascivious molestation of J.T. under section 800.04(5)(b), Florida Statutes (2013). With respect to his diary, the majority recounts its entries, which, I would simply observe, include extraordinarily detailed descriptions of interactions between Mr. Tumlinson and J.T., who is specifically identified by name and appearance throughout his writings. The interactions described in Mr. Tumlinson's diary vividly describe molestation of J.T. by Mr. Tumlinson. Because of J.T.'s infancy at the time of the alleged offense, the State's case against Mr. Tumlinson rested almost entirely on the prior recorded and written confessions Mr. Tumlinson made to the two detectives that later interviewed him, as well as those recounted within his diary.

No evidence was ever presented, or even suggested, during the evidentiary hearings on the State's motion that Mr. Tumlinson suffered from any incapacity or mental illness. At the conclusion of the second hearing, the court made several observations and findings that, to my reading, illustrate the court's misunderstanding of the law and the basis for reversing its order:

> THE COURT: [The State] ha[s] to prove something, the guy who was the family member saw [Mr. Tumlinson's] hand on the diaper, the child has a rash. There was some indication of sexual assault. There is some indication of some action that would prove ninety percent of your case, notwithstanding the journal. You've got nothing. You've got a baby at a house. . . . and this person visited that house on occasion a lot. That's it. That's all the facts that you have.

- 10 -

. . .

> MR. ANDRINGA: Judge, respectfully, the issue is whether the defendant – it sounds like what the Court is saying, I'm not considering his statements and the law requires the Court to determine whether the statements are trustworthy.
>
> THE COURT: *I trust his statements one hundred percent. Your problem is you're asking me to put them in without corpus delicti.*
>
> MR. ANDRINGA: But Judge, and that's the point of the memo, and that's the point of the statute, we do not have to prove corpus delicti under Florida Statute 92.565, as long as his statements are trustworthy.
>
> THE COURT: I disagree, Mr. Andringa. I 100 percent disagree. . . . Geiger makes it clear, you cannot solely rely on the statements that are written, oral, in the journal, to law enforcement, recorded, unrecorded, any of them, because all of them come under your motion, your motion to admit these statements. They don't come independent. *I can only admit them only after you have proven your case, and it is clear that you cannot prove them. You cannot prove any part of any sexual assault . . . .*

(Emphasis added.)

After hearing further arguments from counsel about the case and statutory authorities and reviewing the recorded interview of Mr. Tumlinson, the court concluded:

> I find that the defendant's journal entries, statements to law enforcement, are not due to a mental health issue, as far as I know. . . . We had our hearing and I didn't hear anything about his mental disability or ability. He had conversations with law enforcement. He was able to communicate with them. He was on the street. Everything seemed to be fine, so I'm fine with that. My point is that you can't use the statements that you're asking me to admit to prove the crime.

When it later rendered its written order, the circuit court, again, engaged in a corpus delicti analysis to provide its basis for denying the State's motion. According to

- 11 -

the court's order, the State failed to prove "that the Defendant was left alone with the victim" and "has only shown that the Defendant was a friend of the victim's parents." Which is to say, the State failed to establish a corpus delicti of this crime. The order did not purport to vacate or modify any of the prior findings the court had made on the record (e.g., that there was no evidence of any mental impairment on the part of Mr. Tumlinson; that Mr. Tumlinson's statements to law enforcement were not the result of any mental disability; that "[e]verything seemed to be fine" with respect to his recorded interactions with the detectives; and that Mr. Tumlinson's recorded statements were "one hundred percent" trustworthy). What factual findings the written order contained,[3] to my reading, had nothing to do with the trustworthiness of Mr. Tumlinson's confessions, but revolved entirely around whether the State had provided independent evidence of the offense's commission. Cf. § 92.565(4). Thus, the absence of a corpus delicti appears to have served as the sole basis for the circuit court's finding—and the majority's affirmance—that there was insufficient corroborating evidence of the trustworthiness of Mr. Tumlinson's confessions.

II.

This appeal revolves around the "trustworthiness" that section 92.565(2) of the Florida Statutes requires; a requirement that, in this case, would deem Mr. Tumlinson's confessions as admissible "without the state having to prove a corpus delicti of the crime if the court finds in a hearing . . . that the defendant's confession or

---

[3]The court's order also memorialized its denial of the State's attempt, for purposes of its motion, to utilize Williams rule evidence of Mr. Tumlinson's prior adjudication of delinquency for what may have been a similar offense. The propriety of that ruling was not raised in this appeal.

- 12 -

admission is trustworthy."  Section 92.565(3) describes the court's role in gauging the

trustworthiness of such a confession prior to its admission:

> Before the court admits the defendant's confession or
> admission, the state must prove by a preponderance of
> evidence that there is sufficient corroborating evidence that
> tends to establish the trustworthiness of the statement by the
> defendant.  Hearsay evidence is admissible during the
> presentation of evidence at the hearing.  In making its
> determination, the court may consider all relevant
> corroborating evidence, including the defendant's
> statements.

Section 92.565(4) requires the circuit court to "make specific findings of fact, on the

record, for the basis of its ruling."

The effect this statute's passage had on the common law requirements of

corpus delicti was summarized in Bradley v. State, 918 So. 2d 337 (Fla. 1st DCA 2005):

> This statute eliminates the need to establish the corpus
> delicti of the crime as a predicate to admitting the
> defendant's confession in evidence.  When all of the
> conditions of the statute have been met, the state is entitled
> to introduce the defendant's confession.  The state is not
> also required to present independent proof of each element
> of the crime, as it would be under the corpus delicti rule.  An
> element of the crime may be established by the confession
> itself, so long as the corroborating evidence makes the
> confession trustworthy.

Id. at 340 (citations omitted); see also State v. Dionne, 814 So. 2d 1087, 1092 (Fla. 5th

DCA 2002) (observing that section 92.565 is "a procedural mechanism utilized to admit"

certain confessions in criminal proceedings, which eliminated corpus delicti as a

required predicate for the admission of such confessions).

The circuit court's order in this case could not be described as anything

other than an application of the corpus delicti rule.  And its application of the corpus

delicti rule would have been flawless.  Were it not for the enactment of section 92.565—

- 13 -

which expressly authorizes the admission of a memorialized confession "without the state having to prove a corpus delicti of the crime"—I would have readily agreed with the circuit court's ruling and joined in the majority's affirmance of it. But corpus delicti has been supplanted by section 92.565 for this criminal offense. See Hernandez v. State, 946 So. 2d 1270, 1275 (Fla. 2d DCA 2007) ("When section 92.565 is properly invoked, it replaces the corpus delicti doctrine with the trustworthiness doctrine with respect to the offenses listed in the statute." (citing Geiger, 907 So. 2d at 674)); Bradley, 918 So. 2d at 340. When the circuit court determined that Mr. Tumlinson's confession was, to paraphrase the court's words, one hundred percent trustworthy, that he did not appear to suffer from any mental impairment, and the remaining requirements of the statute were stipulated or satisfied, his confession became admissible under section 92.565.

Our decision in Geiger should not be read to hold anything to the contrary. In Geiger, we reviewed whether a certified nursing assistant's confession to sexually abusing Alzheimer's patients was admissible under section 92.565. Unlike the case at bar, though, there was substantial evidence presented in Geiger that called the trustworthiness of the confession into serious doubt. A clinical psychologist recounted Mr. Geiger's long and unfortunate history of major depression with psychotic features, opined about the "common phenomenon" of false confessions by persons who have delusions, and concluded that Mr. Geiger's admissions could have been a fantasy or the result of a mental disorder. Id. at 671. We observed that "the State presented no corroborating evidence establishing the trustworthiness of Geiger's statements and no evidence, apart from those statements, that Geiger committed any crime." Id. at 675.

We concluded that the State had failed to present competent, substantial evidence that Mr. Geiger's statements were trustworthy under section 92.565 and, in the absence of any other independent evidence of the offense's commission, instructed the trial court to dismiss the sexual battery charge against the defendant. Id. at 676.

On its facts, Geiger is a far cry from the case at bar. There was nothing in the record below that ever called Mr. Tumlinson's veracity, acuity, or cognitive functions into question. "[E]verything seemed fine" with Mr. Tumlinson's interactions and his ability to communicate with the detectives, according to the circuit court. The court below specifically found there was no evidence that Mr. Tumlinson's confessions could have been the result of any mental impairment or disease, and the statements themselves identified J.T. in detail and during the same time frame as Mr. Tumlinson's extended stay at J.T.'s house. I simply find it impossible to reconcile the circuit court's finding that Mr. Tumlinson's admission was "one hundred percent" trustworthy with the court's conclusion that it was not under Geiger.

The legal rule the circuit court apparently gleaned from Geiger was equally unfounded. We did not hold in Geiger—as the circuit court stated at the hearing—that a defendant's confession under section 92.565 could only be admitted after the State had proven its case through a showing of a corpus delicti. Section 92.565(2)'s displacement of the corpus delicti rule was clear, and we said as much in Geiger. Id. at 674 ("We agree that section 92.565 replaces the corpus delicti rule with the trustworthiness doctrine with respect to the enumerated offenses."). Our holding in Geiger did not conflate the common law of corpus delicti and the statute's trustworthiness determination into an interdependent determination, as the circuit court's ruling did

- 15 -

below.  We did not inadvertently reimplement the very common law requirement the statute had replaced.  To be sure, the kind of evidence corroborating a confession's trustworthiness may, at times, be substantially similar in quality or character to the kind of evidence that would have met the traditional requirements of corpus delicti.  But that does not make the two kinds of evidence coterminous; and it certainly does not abolish the distinct trustworthiness requirement the legislature crafted when it enacted section 92.565, a statute which allows the circuit court to rely on the statements themselves as proof of their trustworthiness.  See § 92.565(2) ("In making its determination, the court may consider all relevant corroborating evidence, including the defendant's statements.").

The language within the Geiger opinion that both the circuit court and the majority have seized upon—that there must be independent, corroborating evidence of trustworthiness, apart from the confession itself, to satisfy the statute's requirement—was plainly satisfied in this case.[4]  Again, the circuit court was presented with evidence that Mr. Tumlinson had spent significant time with J.T., including, on one occasion, outside of J.T.'s mother's presence; that, based upon the court's review of his recorded interview, he seemed "fine" in his interactions with law enforcement; that his interview was conducted in public; and that he did not appear to suffer from any kind of mental

---

[4]In Geiger, 907 So. 2d at 674, we applied certain federal precedents, interpreting federal law, to construe section 92.565 in a similar fashion as the federal courts' adoption of the trustworthiness doctrine.  We concluded that the statute's trustworthiness requirement, like the trustworthiness doctrine in federal jurisprudence, must encompass "some evidence that tends to establish the type of harm for which the defendant is being criminally charged."  Id. at 675 (citing Wong Sun v. United States, 371 U.S. 471, 488-89 (1963) ("It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused.")).

impairment. The circuit court was not only presented with this evidence, the court recounted much of it *as findings of the court* at the conclusion of the evidentiary hearings, findings that the court never modified or retracted in its later written order. In my opinion, the circuit court simply misapplied our holding in Geiger by collapsing the requirement for independent corroborating evidence of a confession's trustworthiness into the corpus delicti evidentiary requirement that the confessed offense was actually committed.

There was competent, substantial evidence—specifically described by the circuit court during the hearings—that Mr. Tumlinson's confession was sufficiently trustworthy to be admitted, and the circuit court made a finding on the record that his confession was one hundred percent trustworthy. Conversely, there was no evidence recited within the circuit court's written order—apart from its misapplication of corpus delicti—that supported its finding that Mr. Tumlinson's statements were untrustworthy. Cf. § 92.565(4) ("The court shall make specific findings of fact, on the record, for the basis of its ruling."). Under section 92.565, the State should have been permitted to present these admissible confessions against Mr. Tumlinson in a criminal case. I would reverse the circuit court's order accordingly.