PER CURIAM.
Because the trial court correctly applied section 92.665, Florida Statutes (2014), and this court’s holding in Geiger v. State, 907 So.2d 668 (Fla. 2d DCA 2005), we must affirm its order denying the State’s motion to admit statements made by defendant Kenneth Tumlinson.
Kenneth Tumlinson was charged with lewd or lascivious molestation of a child under twelve years of age after law enforcement discovered and then questioned Tumlinson about his personal journal entries that described sexual .contact with a child, J.T. Law enforcement was contacted after Tumlinson’s former roommates found the troubling journal entries Tumlinson left behind at their home. Officers from the Largo Police Department then made contact with Tumlinson, who gave the officers a recorded oral and written statement. The detectives confirmed from their conversation with Tumlinson that Tumlinson authored the journals and had spent time with a one-year-old, child, J.T., who is the daughter- of an acquaintance in Pasco County.
The State filed a motion to admit Tum-linson’s statements under section 92.565. Under section 92.565(2), when a defendant is charged with a crime involving sexual abuse,
the defendant’s memorialized confession or admission is admissible during trial without the state having to prove a cor *768 pus delicti of the crime if the court finds in a hearing conducted outside the presence of the jury that the state is unable to show the existence of each element of the crime, and having so found, further finds that the defendant’s confession or admission is trustworthy.
But “[bjefore the court admits the defendant’s confession or admission, the state must prove by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement by the defendant.” § 92.565(3). Hearsay evidence is admissible at the hearing, and the court “may consider all relevant corroborating evidence, including the defendant’s statements.” § 92.565(3).
Here, the State argued that it was unable to show each element of the crime because the child victim was nonverbal at 1½ years old. The trial court held two hearings on the State’s motion to determine if Tumlinson’s statements could be admitted under section 92.565. At the hearings counsel for the State clarified that the State sought to have all three of Tumlinson’s statements admitted: “We want to admit the defendant’s statements in the journal and his written and recorded statement to law enforcement.”
The State’s first witness was the child’s mother. She testified that she lived in New Port Richey with her daughter J.T., J.T.’s father, her mother, sister, mother’s boyfriend, and sister’s boyfriend. The sister’s boyfriend had a friend, Kenneth Tumlinson, who regularly visited the house. He was there on a “day to day to day to day basis .for months on end” until July or August 2013. The mother recalled one instance in which she left the child alone with her sister’s boyfriend and Tum-linson: “[Tumlinson] happened to be at the house hanging out with [my sister’s boyfriend] so I asked them to watch the baby and I went down to the store to go get her [baby formula].”
A detective from the Largo Police Department testified that she was called to the location where Tumlinson’s handwritten journals were found.[1] The following journal excerpts, dated March 2013, were entered into evidence as exhibits 1 and 2:
Yesterday I proved to myself that I have really no self-control when it comes to my impulses and no self-discipline in my spiritual practices. When I was left alone in [J.T.] room with her I had reverted back all the way to how I was at 16/17 that I would try to take advantage of others. A few times I put her on my lap pulling her away from the TV and imagined how if we were nude we’d be rubbing together. Then, when she was sitting on the floor I rubbed her diaper over her crotch area imagining as if I were playing with her. For a moment she seemed a bit confused as to what I was doing then after a bit she pushed my hand away not liking what I was doing and was angry at me (perhaps scared) the rest of the time. I just hope I haven’t lost the poor girl’s trust.
Exhibit 1.
I am very glad now because I went over to [my friend’s] to hang out and [J.T.] was happy to see me. I sat in her room most of the time watching TV with her though a good portion of it was spent flirting. (I guess I gotta remember with her age comes a different set of emotional reactions than I am used to or was expecting.) Anyway, we played and I even managed to kiss her a few times and getting past the snottyness I liked it. She has such soft lips. Also, she let *769 me rub her back and leg a bit so some touch is ok for now. It did occur to me though that she has a little growing to do before she can remotely understand the way I feel and the meaning behind my gestures to her like all the loving energy I sent to her. She still has much true babyness to her. I guess my expectations got carried away knowing she can walk now. Of course on the other hand I am glad I get to see her reach developmental milestones and perhaps even help by adding the stimulation of interacting with her.
Exhibit 2.
The detective testified that she and another detective located and interviewed Tumlinson in August 2013. She stated that during the interview, Tumlinson admitted that he authored the journals and that he touched the child over her diaper. Tumlinson gave the following written statement:
In regards to my journal entries, they are only that, journal entries. I use my writing to clear my mind and vent my impulses so I don’t act on them. [J.C.] is the daughter of my friend. I did not by any means touch her as the journal makes clear of touching her diaper/[illegible], not her. There have been no incidents of any sort. My journal entry does not imply rubbing her on any part of myself. Again I did not. Also, there have been no incidents with anyone else at all.
The trial court engaged in a lengthy dialogue with counsel and, as observed by the dissent, at times it appeared that the trial court applied a common law corpus delicti analysis to the evidence. But in making its final ruling, the trial court applied the proper analysis and made the proper findings under section 92.565 and this court’s holding in Geiger. The trial court’s order was not, as the dissent describes, an application of the corpus delicti rule.
Generally “[a] person’s confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime.” State v. Allen, 335 So.2d 823, 825 (Fla.1976). For that reason, in a criminal prosecution, the State is required to prove corpus de-licti independent of the defendant’s confession before the confession may be admitted into evidence. Ramirez v. State, 133 So.3d 648, 651 (Fla. 1st DCA 2014). But section 92.565 contemplates an exception to this rule and “eliminates corpus delicti as a predicate for the admission of a defendant’s confession when the state is unable to show the existence of each element of the offense” due to the physical or mental health or age of the victim. State v. Dionne, 814 So.2d 1087, 1091 (Fla. 5th DCA 2002).
Section 92.565 serves the same general purpose as the corpus delicti rule but it contains a different set of safeguards. A defendant’s confession is admissible in evidence under the statute only if: (1) the offense qualifies as a sexual abuse case; (2) the state is unable as a result of some disability on the part of the victim to prove an element of the crime; (3) the state has proven that the defendant’s confession is trustworthy; and (4) the trial court has made specific findings of fact on the issue of trustworthiness.
Bradley v. State, 918 So.2d 337, 340 (Fla. 1st DCA 2005).
A defendant’s confession or admission shall not be admitted under section 92.565 until the State has proven by a preponderance of evidence that there is sufficient corroborating evidence that tends to establish the trustworthiness of the statement. § 92.565(3). As this court has acknowledged—and the dissent ig- *770 ñores—“a confession cannot corroborate itself,” meaning the trial court cannot rely “exclusively on the content of [the defendant’s] statements and the circumstances under which they were made to form an opinion about their trustworthiness.” Hernandez v. State, 946 So.2d 1270, 1276 (Fla. 2d DCA 2007). So even though section 92.666 replaces the' corpus delicti rulé with the “trustworthiness doctrine” and ‘■‘does not require independent proof of each element of the crime in order for a confession to be admitted, there must be some evidence that tends to establish the type of harm for which the defendant is being criminally changed.” Geiger v. State, 907 So.2d 668, 675 (Fla. 2d DCA 2005) (emphasis added).
This court’s application of section 92.666 in Geiger is instructive. In Geiger, a certified nursing assistant was charged with sexual battery and lewd or lascivious exhibition after he confessed to an elder at his church that he had committed sex crimes against his .patients. Geiger repeated his confession to the facility’s staff and again to the police.. Because Geiger’s patients suffered from Alzheimer’s disease and were incapable of describing the abuse, the State filed, a motion to.have the statements admitted under section 92.665. The evidence showed that Geiger had ample opportunity to be alone with the victims. There was also testimony that Geiger suffered from, a mental illness. The trial court granted the State’s motion, concluding that the spontaneous and consistent statements had “quite a bit of indicia of reliability” and were trustworthy. Id, at 672. “In making its findings, the trial court relied on the contents of Geiger’s statements and how the statements provided their own trustworthiness;” Id. at 675.
For example, the trial court thought it significant that, based on Geiger’s statements, consent could perhaps be used as a- defense. The court also found that Geiger?s statements were reliable because Geiger voluntarily made the statements to a church elder and others. The court stated that the confession -to the elder showed that perhaps Geiger believed his confession was privileged and would let him “get it right with God.” .

Id.

This court reversed. It concluded that the trial court’s findings were “not based on independent evidence corroborating the trustworthiness of the statements.” Id, The" "trial court erred "when it “simply viewed the statements as credible based on the statements themselves.” Id. In short, the State failed to meet its burden under section 92.565, because “the State presented no corroborating evidence establishing the trustworthiness of Geiger’s statements and no evidence, apart from.- those statements, that Geiger committed any crime.” Id, ..
Similarly, here, nothing apart from Tumlinson’s journals and oral and written statements—all of which the State sought to have admitted—corroborates those statements. And as the trial court properly noted in its final order, Tumlinson’s journal entries and oral and written-statements cannot be viewed as independent evidence corroborating the trustworthiness of the statements themselves.
In ruling on the State’s motion the trial court made findings in its written order that the State established: “(1) the Defendant is over 18 years of age; (2) that the alleged victim is less than 12 years of age; (3) that the Defendant is a friend of the parents of the victim; (4) that the Defendant visited the victim’s home while the child was present.” The trial court specifically noted that “there was no testimony that the defendant was ever alone with the victim child.” Based on those findings, the trial court made the specific finding under section 92.565 that “the State has failed to *771 prove, by a preponderance of the evidence, the trustworthiness of the Defendant’s journal entries.”
The dissent asserts that “there was competent, substantial evidence—specifically described by the circuit court during the hearings—that Mr. Tumlinson’s confession was sufficiently trustworthy to be admitted.” But in making that assertion, the dissent fails to appreciate the correct legal standard: there must be competent substantial evidence that corroborates the confession, As explained in Geiger, a defendant’s mere presence with the victim and opportunity to commit the offense was not sufficient evidence to corroborate the statement under the statute. Similarly, here that factor, standing alone, is also not sufficient evidence of corroboration. And the other three factors—that Tumlinson seemed “fine” during the statement, that the interview was in public, and that there was no evidence of a mental impairment-are all factors concerning the actual confession itself, These factors are not independent evidence of corroboration, and in any event, this court is not permitted to reweigh the evidence. Accordingly, we conclude that the trial court properly applied section 92.565 and this court’s holding in Geiger.
Lastly we write to address the dissent’s position that it is “impossible to reconcile the circuit court’s finding that Mr, Tumlin-son’s admission was ‘one hundred percent’ trustworthy with the court’s conclusion that it was not under Geiger.” The trial court’s statement during the hearing, “I trust his statements one hundred percent,” shows that the trial court could accept the statements at face value—it was not an application of-the legal standard under-the statute. When the trial court applied the correct legal standard, it found’ that the State fell short of its burden. •
Because the trial court applied the correct analysis under section 92.565 and this court’s holding in Geiger, we are compelled to affirm.
CRENSHAW, J, and DAKAN, STEPHEN L., Associate Senior Judge, Concur.
LUCAS, J., Dissents with opinion.

. The journals were found in a residence separate from where the alleged molestation occurred.